**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ORION PROPERTY GROUP, LLC,       )
individually and on behalf of others )
similarly situated,              )
                                 )
                **Plaintiff,**       )
                                 )   **CIVIL ACTION**
v.                               )
                                 )   **No. 17-2738-KHV**
MARK HJELLE,                     )
                                 )
                **Defendant.**       )
_____)

## MEMORANDUM AND ORDER

Orion Property Group, LLC asserts putative class claims against Mark Hjelle for violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.[1] Specifically, plaintiff alleges that defendant used a corporate entity, CSC Service Works, Inc., as a vessel to engage in a scheme to defraud customers of CSC. See First Amended Class Action Complaint (Doc.#4) filed February 28, 2018 at 15-17. This matter comes before the Court on Defendant Mark Hjelle's Motion To Dismiss Plaintiff's First Amended Class Action Complaint (Doc. #18) filed May 15, 2018. For reasons stated below, the Court finds that it lacks personal jurisdiction over defendant and sustains defendant's motion in part. It also orders the parties to further brief whether transfer or dismissal would serve the interests of justice under 28 U.S.C. § 1631.

---

[1] Orion brings suit on behalf of a putative class comprised of "[a]ll persons, including entities, having contracts with CSC who have been subject to a 9.75% 'administrative fee.'" First Amended Class Action Complaint (Doc. #4) ¶ 68.

## Legal Standards

Rule 12(b)(2), Fed. R. Civ. P., governs motions to dismiss for lack of personal jurisdiction. Plaintiff bears the burden of establishing personal jurisdiction and at this stage of the litigation, need only make a prima facie showing. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069-70 (10th Cir. 2008). At this stage, the burden on plaintiff is light. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). To the extent that defendant's affidavits do not controvert the well-pleaded allegations of the complaint, the Court must accept plaintiff's allegations as true. See id. at 1505 (10th Cir. 1995). If defendant sufficiently challenges the jurisdictional allegations, plaintiff must support them with competent proof of supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). Plaintiff may do so by demonstrating, by affidavit or other written materials, facts that if true would support jurisdiction over defendant. TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007). The Court resolves any factual disputes in favor of plaintiff. Wenz, 55 F.3d at 1505.

## Facts

In the first amended complaint, plaintiff alleges the following facts.

### Orion Property Group, LLC

Orion Property Group, LLC is a property management limited liability company which is headquartered in Overland Park, Kansas. First Amended Class Action Complaint (Doc. #4) ¶ 33. Orion manages properties in more than 20 states across the country, including Kansas and Missouri. Id. Michael Napovanice is principal and president of Orion.

Orion has signed a laundry vending machine lease agreement under which CSC ServiceWorks, Inc. ("CSC") maintains and operates vend-based laundry equipment at

properties which Orion manages. Id. ¶ 33. Orion signed the lease agreement on behalf of the owner of Chequers Apartments, a property for which Orion operates as an agent. Id. In addition, Orion has received an assignment of claims from the owner of Chequers Apartments. Id. ¶ 33. All invoices and letters are sent to Orion's mailing address in Overland Park, Kansas. Id. ¶ 33.

In May of 2017, Napovanice received a letter dated May 17, 2017 from Mark Hjelle, Chief Executive Officer ("CEO") of CSC, see infra. Id. ¶ 55.

On December 15, 2017, the area sales manager of CSC emailed Orion the "12-month reconciliation" for "Chequers 760-0438." Id. ¶ 34. The email included an Excel attachment which showed fraudulent "administrative fee" overcharges, month by month, for part of 2017. Id.

**CSC ServiceWorks, Inc.**

CSC is a Delaware corporation with headquarters in Plainview, New York. Id. ¶ 35. CSC is registered to do business in the State of Kansas and has consented to jurisdiction in the state. Id. ¶ 35.

CSC is the nation's leading provider of multi-family residential and commercial laundry solutions, and maintains equipment at more than 80,000 locations across the country. First Amended Class Action Complaint (Doc. #4), ¶¶ 1, 4. CSC has a multi-family laundry vending division named Coinmach. Id. ¶ 3. Many of the laundry leases at issue in this case are between Coinmach and putative class members. Id. ¶ 4. Recently, CSC implemented a "rebrand" to consolidate all of its companies under the name CSC. Id. ¶ 3.

CSC leases space from owners of apartment buildings and other small business entities for the purpose of installing, maintaining and operating coin-operated and/or card-operated laundry equipment. Id. ¶ 42. Under the lease agreements, CSC pays Orion and other members of the

putative class a portion of money collected from the laundry equipment.[2]  Id. ¶ 43.  Because CSC is responsible for collecting and accounting gross receipts, the lessors ("CSC customers") place a great deal of trust in CSC to engage in ethical, reliable and transparent accounting and collection practices.  Id. ¶ 52.

Mark Hjelle lives in Maryland.  Id. ¶ 35.  On July 14, 2016, the CSC Board of Directors appointed Hjelle to be Chief Executive Officer ("CEO") of CSC.  Id. ¶ 7.  Within a few months of becoming CEO, Hjelle devised a fraudulent scheme to increase CSC revenues by unilaterally imposing an "administrative fee" to siphon off 9.75 per cent of gross collections under laundry leases.  Id. ¶¶ 13, 56.  Hjelle knew that because CSC collected and controlled all revenues, its customers would be powerless to stop the fee.  Id. ¶ 56.

On May 17, 2017, Hjelle wrote, signed and arranged to mail a letter to each CSC customer, including Orion and several other customers in the State of Kansas.  Id. ¶¶ 14, 35.  In the letter, Hjelle lulled CSC customers into believing that their lease agreements authorized CSC to charge the "administrative fee."  Id. ¶ 15.  Hjelle intentionally and falsely represented that (1) the new fee was administrative in nature; (2) the customers' existing lease agreements authorized the fee; (3) the fee resulted in a net gain to customers; and (4) CSC was waiving other costs that it could have collected

---

[2]     The success of the lease arrangement depends in large part on how the lease is structured.  Id. ¶ 53.  The standard laundry room lease agreements structure "rent" in a number of different ways: a straight percentage of gross monthly receipts; a minimum amount per machine based on its vend price or gross monthly revenue; or a "first vend" sum, like the first $1.00 or first sale of each machine per day, plus a percentage of gross collection.  Id. ¶ 45.  Most commonly, the standard lease provides for a straight percentage – often 50 per cent – of gross monthly receipts.  Id. ¶ 46.  The standard lease generally specifies the vend prices and sets forth other terms regarding routine and emergency maintenance, coverage for theft, vandalism and replacement, lease renewal, etc.  Id. ¶¶ 47, 49.  The standard lease contains a clause stating that it constitutes the parties' entire agreement and may not be modified except in writing signed by both parties.  Id. ¶ 50.

under existing lease agreements.  Id. ¶ 23.  In addition, Hjelle provided an illusory "additional benefit" by offering up to $200 in coverage for events related to vandalism and purporting to waive any potential claims for past administrative costs that CSC was entitled to deduct but had not deducted.  Id. ¶ 16.  Hjelle covered up the fraud by creating a website dedicated to "fee transparency."  Id. ¶ 17.

By unilaterally imposing a phony "administrative fee" which was not authorized under the lease agreements, Hjelle defrauded CSC customers and since May of 2017, has been illegally stealing from CSC customers 9.75 per cent of gross receipts each month.  Id. ¶ 57.

By systematically deducting 9.75 per cent of gross receipts due to CSC customers each month, Hjelle pumped up CSC's bottom line, priming it for a sale to line his own pockets.  Id. ¶ 19.  Hjelle hopes that a sale will occur before investors and the CSC Board catch on to the scheme.  Id. ¶ 19.  Alternatively, the CSC Board is aware of the scheme to defraud.  Id.

In addition to the letter of May 17, 2017, Hjelle sent CSC customers monthly statements and payments by mail and/or wire which reflected the 9.75 per cent "administrative fee" deduction and perpetuated his fraudulent scheme.  Id. ¶¶ 61, 62, 66.

**Additional Facts**

In response to defendant's motion to dismiss, plaintiff provides evidence of the following facts:

The Kansas City Art Institute owns Chequers Apartments.  Declaration Of Michael Napovanice ¶ 3, Exhibit A to Plaintiff's Opposition (Doc. #24-7).  Both are located in Kansas City, Missouri.  Id.; see also https://kcai.edu/contact-us/ (last visited October 16, 2018).  Since December 1, 2013, Orion has managed Chequers Apartments.  Id.  It is authorized to enter into

contracts and generally manage the affairs of Chequers Apartments. Id. Orion receives a management fee which is tied to revenues collected by Chequers Apartments, including revenues from onsite laundry facilities. Id. Chequers Apartments has assigned Orion all of its rights and claims to prosecute this lawsuit. Id. ¶ 4

Orion received Hjelle's letter of May 17, 2017 at its offices in Overland Park, Kansas. Id. ¶ 5. The letter is on CSC letterhead and Hjelle signed it as "Chief Executive Officer." May 17, 2017 Letter, Exhibit A-1 to Napovanice Declaration. The letter appears to be a form letter and does not contain the name or address of its recipient. See id. In part, it states as follows:

> Dear Client:
>
> \*\*\*
>
> We have made and will continue to make significant investments in our people, systems, technology and service delivery, as well as maintaining a commitment to security and sustainability; but we are also facing increased costs in nearly every aspect of our business. In the past, we have offset some of these costs with efficiency improvements and by leveraging our scale, but we are no longer able to absorb these costs alone.
>
> In the past, we have not used provisions in our agreement with you to share these increased costs. As we continue to align your interests (high occupancy rate of satisfied residents) with ours (to achieve an acceptable operating margin) and to jointly provide a great laundry experience for your residents, it is necessary to begin to share the agreed upon costs as outlined in our agreement.
>
> Beginning this month, you will see an Administrative Fee of 9.75% . . . deducted from your gross collections. \* \* \*

Id.

Beginning in May of 2017, and each month thereafter, Orion has received in its offices in Overland Park, Kansas, a summary collections statement from CSC which shows a reduction of 9.75 per cent in gross collections from onsite laundry operations at Chequers Apartments. The statement for October of 2017 is addressed as follows:

>Chequers Apartments
>c/o Nicholas Mods
>8826 Santa Fe Drive, Suite 190
>Overland Park, Kansas 66212

Statement Dated October 19, 2017, Exhibit A-2 to Napovanice Declaration.

Orion also manages two properties in Kansas that CSC services. With respect to those properties, Orion also received Hjelle's letter of May 17, 2017 in its Overland Park offices. Napovanice Declaration ¶ 8. Orion knows of at least one other entity in Kansas – Shangri La Apartments in Shawnee – that had a contract with CSC and received the same letter. Id. ¶ 9.

**Analysis**

Defendant urges the Court to dismiss plaintiff's claims for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., and for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. See Defendant Mark Hjelle's Memorandum In Support Of His Motion To Dismiss Plaintiff's First Amended Class Action Complaint (Doc. #19) filed May 15, 2018 at 3-29. A court without jurisdiction over the parties cannot render a valid judgment. See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir.1998). Accordingly, before addressing the merits of the case, the Court must determine whether it has personal jurisdiction over defendant. See id.; see also First Magnus Financial Corp. v. Star Equity Funding, LLC, No. 06-2426-JWL, 2007 WL 635312, at *4 (D. Kan. Feb. 27, 2007) (not addressing merits of 12(b)(6) motion because court lacked personal jurisdiction).

**I.    Personal Jurisdiction**

Determining personal jurisdiction over a nonresident defendant in a federal question case requires two steps. First, the Court examines whether the applicable statute potentially confers jurisdiction by authorizing service of process on defendant. See Peay v. BellSouth Med. Assistance

Plan, 205 F.3d 1206, 1209 (10th Cir. 2000). The Court then determines whether the exercise of jurisdiction comports with due process. Id. If the applicable statute does not confer jurisdiction, the Court turns to Rule 4, Fed. R. Civ. P., which governs service of process in federal cases.

**A. RICO**

Orion asserts that RICO authorizes nationwide service of process on Hjelle. See Plaintiff's Opposition To Defendant Hjelle's Motion To Dismiss Plaintiff's First Amended Class Action Complaint (Doc. #24-7) filed June 5, 2018 at 11. As noted, in a federal question case, the Court can assert personal jurisdiction if (1) the applicable statute potentially confers jurisdiction by authorizing service of process on defendant and (2) the exercise of jurisdiction comports with due process. See Peay, 205 F.3d at 1209. Orion does not cite a specific statutory provision, but it apparently refers to 18 U.S.C. § 1965. That statute provides in relevant part as follows:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(a).

In Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1231 (10th Cir. 2006), the Tenth Circuit analyzed the subsections of Section 1965. See id. at 1229-33. It found that under subsection (a), "an action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." Cory, 468 F.3d at 1230-31 (quoting PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998)).[3] Here, Orion brings suit

---

[3] If plaintiff establishes jurisdiction as to one defendant, then subsection (b) authorizes nationwide service of process on "other parties" residing in other districts, if necessary to further the "ends of justice." Subsection (b) states as follows:

(continued...)

against only one defendant. Accordingly, it must establish that the Court has personal jurisdiction based on minimum contacts between Hjelle and the forum state, i.e. Kansas. See Cory, 468 F.3d at 1233.

**B.     Minimum Contacts**

Under Rule 4(k)(1)(A), service of summons establishes personal jurisdiction over a defendant who is subject to jurisdiction in the state where the district court is located – here, Kansas. See Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp.2d 1074, 1076 (D. Kan. 1998). Personal jurisdiction exists where (1) jurisdiction is proper under the Kansas long-arm statute, K.S.A. § 60-308(b); and (2) the exercise of jurisdiction does not offend due process under the Fourteenth Amendment. See Cory, 468 F.3d at 1233; Technology Funding, 2012 WL 13081209, at *4.

    **1.     Kansas Long-Arm Statute, K.S.A. § 60-308(b)**

To meet its prima facie burden to show personal jurisdiction, Orion must allege that Hjelle committed one of the enumerated acts listed in the Kansas long-arm statute, K.S.A. § 60-308(b).[4]

---

(...continued)
>   (b)     In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof. * * *

18 U.S.C. § 1965(b); see also Cory, 468 F.3d at 1230 (citing PT United Can, 138 F.3d at 71); Technology Funding Group, LLC v. Clayborne, No. 11-843 BB/ACT, 2012 WL 13081209, at *3 (D.N.M. January 20, 2012).

    [4]    Section 60-308(b) states, in relevant part, as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of
(continued...)

See Echtinaw v. Lappin, No. 08-3011-KHV, 2009 WL 604131, at *8 (D. Kan. March 9, 2009). Orion does not specify the portion of the Kansas long-arm statute on which it relies.[5] See Plaintiff's Opposition (Doc. #24-7) at 13. Ordinarily, the Court will not presume to construct arguments to establish a plaintiff's prima facie burden. See TL Enterprises, Inc. v. Haes Contracting, Inc., 2012 WL 940348, at *4 (D. Kan. March 20, 2012). Here, however, Hjelle apparently concedes that Orion can meet the requirements of Section 60-308(b). See Defendant's Memorandum (Doc. #19) (because Kansas long-arm statute construed broadly, court need only conduct constitutional due process analysis). In light of defendant's position, the Court proceeds to the due process analysis. See, e.g., Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011) (because Kansas

---

(...continued)
    the courts of this state for any claim for relief arising from the act:
        (A) Transacting any business in this state;
        (B) committing a tortious act in this state;
        * * *
        (E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;
        * * *
        (G) causing to persons or property in this state an injury arising out of an act or omission outside this state by the defendant if, at the time of the injury, either:
            (i) The defendant was engaged in solicitation or service activities in this state; or
            (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed in this state in the ordinary course of trade or use; * * *

K.S.A. § 60-308(b).

[5]    Orion asserts that because courts construe the Kansas long-arm statute broadly to allow jurisdiction to the full extent permitted by due process, it can proceed directly to the due process inquiry. See Plaintiff's Opposition (Doc. #24-7) at 13.

long-arm statute construed broadly to allow jurisdiction to full extent permitted by due process, court need not conduct statutory analysis separate from due process analysis).

The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." Cory, 468 F.3d at 1233 (quoting OMI Holdings, 149 F.3d at 1090). The Court may exercise jurisdiction over a nonresident defendant only if sufficient "minimum contacts" exist between defendant and the forum state. Cory, 468 F.3d at 1233. Plaintiff may satisfy this standard by showing that defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."[6] OMI Holdings, 149 F.3d at 1090-91 (quotations and citations omitted). If plaintiff demonstrates sufficient minimum contacts, the Court must also consider whether exercising personal jurisdiction over defendant offends "traditional notions of fair play and justice," i.e. whether exercising jurisdiction is "reasonable" in light of the circumstances surrounding the case. Id. at 1091 (quoting Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 113 (1987)).

### 1. Assignment Of Claims

As a preliminary matter, the Court notes that although Orion is located in Kansas, it asserts the claims of Chequers Apartments, which is located in Missouri and is owned by the Kansas City Art Institute, also located in Missouri.[7] As assignee of the claims, it stands in the shoes of the

---

[6] Alternatively, plaintiff may establish general personal jurisdiction by showing that defendant has had "continuous and systematic general business contacts" with the forum state. OMI Holdings, 149 F.3d at 1091 (quotations and citations omitted). Here, plaintiff does not assert general personal jurisdiction.

[7] In the first amended complaint, plaintiff asserts that the *owner* of Chequers
(continued...)

assignor, i.e. Chequers Apartments. Orion only has standing to assert the rights of Chequers Apartments. See Denver Health & Hosp. Auth. v. Beverage Distrib. Co., 546 Fed. Appx. 742, 745 (10th Cir. 2013); Fidelity & Deposit Co. of Maryland v. Hartford Cas. Ins. Co., 215 F. Supp.2d 1171, 1176-77 (D. Kan. 2002). In other words, Orion has standing to assert the injury-in-fact which Chequers Apartments suffered. See, e.g., MAO-MSO Recovery II, LLC v. Farmers Ins. Exchange, No. 2:17-cv-02522-CAS(PLAx), 2018 WL 2106467, at *6 (C.D. Cal. May 7, 2018). Thus, for purposes of determining personal jurisdiction, the Court looks to whether the claims of Chequers Apartments sufficiently arise from defendant's Kansas-related activities.

### 2. Purposeful Direction

Hjelle asserts that Orion has not adequately alleged that he purposefully directed his activities to residents of Kansas. See Defendant's Memorandum (Doc. #19) at 5-11. In considering whether Hjelle purposefully directed activities toward Kansas, the Court examines both the quantity and quality of his Kansas contacts. See OMI Holdings, 149 F.3d at 1092. Orion may demonstrate purposeful direction by showing that Hjelle committed (1) an intentional act that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. See Dudnikov, 514 F.3d at 1078 (citing Calder v. Jones, 465 U.S. 783 (1984)).[8]

---

(...continued)
Apartments has assigned its claims to plaintiff. See First Amended Class Action Complaint (Doc. #4) ¶ 33. In response to defendant's motion to dismiss, plaintiff asserts that Chequers Apartments has assigned the claim. See Plaintiff's Opposition (Doc. #24-7) at 2; Napovanice Declaration (Doc. #24-2) ¶ 4. For purposes of this analysis, the Court reaches the same result regardless which entity assigned the claims to plaintiff.

[8] This test may not necessarily describe the only way to satisfy the purposeful direction test, see Dudnikov, 514 F.3d at 1071, but Orion does not assert that another test applies here. See Plaintiff's Opposition (Doc. #42-7) at 13.

(continued...)

### a. Intentional Action

To demonstrate purposeful direction, Orion must first show that Hjelle committed an intentional act. See Dudnikov, 514 F.3d at 1078. Orion alleges that Hjelle committed numerous intentional acts including (1) using CSC as vessel to commit a pattern of racketeering activity; (2) drafting and signing the letter of May 17, 2017 to fraudulently misappropriate proceeds owed under the lease agreements; (3) fraudulently imposing an unauthorized 9.75 per cent administrative fee to deprive CSC customers of their rightful lease payments; (4) sending monthly statements and payments which did not disclose that the lease agreements did not authorize the administrative fee; and (5) setting up a website to trick CSC customers into believing that the leases permitted and authorized the administrative fee. See First Amended Class Action Complaint (Doc. #4) ¶¶ 82-97. These allegations are sufficient to satisfy the intentional action requirement. See, e.g., Grynberg v. Ivanhoe Energy, Inc., 490 Fed. Appx. 86, 97 (10th Cir. 2012); Dudnikov, 514 F.3d at 1073.[9]

### b. Expressly Aimed At Forum State

The second prong requires that Orion show that Hjelle aimed his intentional action at the forum state. See Dudnikov, 514 F.3d at 1078. The "express aiming" test focuses on defendant's intentions, i.e. the "focal point" of his purposeful efforts, as opposed to where the alleged harm was actually felt. Id. at 1075. With respect to this test, the Tenth Circuit requires that

---

(...continued)

[9] Because these intentional acts involve allegedly wrongful or tortious conduct, the Court need not address whether Calder requires that the intentional act be wrongful. See, e.g., Grynberg., 490 Fed. Appx. at 97; Dudnikov, 514 F.3d at 1072-73.

the forum state be the "focal point of the tort," and not that defendant individually targeted a known forum resident. Id. at 1074 n.9 (citations omitted).

Hjelle asserts that Orion can point to only one act which he directed to Kansas, i.e. his letter of May 17, 2017 which it received in Kansas. Orion asserts that Hjelle also directed the following acts toward Kansas: (1) the "transparency website" which CSC set up to purportedly explain the 9.75 per cent administrative fee; and (2) monthly statements and wire transfers which reflected reduced monthly lease payments as a result of the administrative fee. See Plaintiff's Opposition (Doc. #24-7) at 12. Hjelle asserts that CSC – not him personally – performed the additional acts, i.e. establishing the transparency website and sending monthly statements and wire transfers. See Defendant's Memorandum (Doc.#19) at 8. Construed in the light most favorable to plaintiff, the factual allegations support a reasonable inference that as CEO, Hjelle directed CSC to perform these actions.

Hjelle asserts that he directed the alleged actions nationwide, i.e. that Kansas was not the focal point of the alleged scheme. See Defendant's Memorandum (Doc. #19) at 8. The relevant inquiry, however, is whether Kansas was the focal point of the claim which plaintiff asserts, i.e. the alleged fraud against Chequers Apartments.[10] Orion asserts that to perpetuate his fraudulent scheme against Chequers Apartments, Hjelle directed the letter, website and monthly statements toward it

---

[10] At this stage in the litigation, the claims of unnamed members of a proposed class which has not been certified are not relevant to whether the Court has personal jurisdiction over defendant. See, e.g., Chernus v. Logitech, Inc., No. 17-673(FLW), 2018 WL 1981481, *3 (D.N.J. Apr. 27, 2018) (named plaintiff's claim must result from defendant's forum-related activities, not claims of unnamed members of proposed class who are not party to litigation absent class certification) (citations omitted); Tsan v. Seventh Generation, Inc., No. 15-cv-00205-JST, 2015 WL 3826243, at *3 (N.D. Cal. June 17, 2015) (same) (citation omitted).

in Kansas, as property manager for Chequers Apartments. See Plaintiff's Opposition (Doc. #24-7) at 12. While the Court assumes these facts to be true, Orion overlooks the fact that the alleged scheme to defraud involved taking an unauthorized fee from Missouri residents, on account of laundry machines located in Missouri. Orion asserts that because defendant mailed the letter and monthly statements to Kansas, the physical location of Chequers Apartments has no bearing on what defendant knew or where he directed his tortious acts. See Plaintiff's Opposition (Doc. #24-7) at 14. The Court disagrees. That Hjelle directed communications regarding the administrative fee to the property manager in Kansas does not show that the "focal point of the tort" was Kansas. See, e.g., Dudnikov, 514 F.3d at 1075 (where defendant intended to halt eBay auction in Colorado, focal point of tort was Colorado even though defendant sent notice to eBay office in California); see also General Elec. Capital Corp. v. Grossman, 991 F.2d 1376, 1387-88 (8th Cir. 1993) (focal point of alleged wrongdoing by financial auditors was where audited company was located and where auditing and accounting functions took place, not where accounting reports were directed). To the contrary, even accepting Orion's allegations as true and construing them in the light most favorable to Orion, it appears that Hjelle targeted communications to Kansas only because the property manager was located in Kansas. The focal point of the alleged tort was Missouri, where the laundry services and apartments were located. On this record, Orion has not alleged facts which demonstrate that with respect to its claims, i.e. the claims of Chequers Apartments, Hjelle expressly aimed his intentional actions at the forum state.

### c. Brunt Of Injury Felt In Forum State

Orion has also failed to demonstrate the third prong, i.e. that Hjelle committed the intentional acts with knowledge that the brunt of the injury would be felt in the forum state. See

Dudnikov, 514 F.3d at 1078. Orion asserts that Hjelle engaged in a nationwide scheme which involved "likely hundreds of systematic contacts with Kansas every month" directed at Orion "and potentially hundreds of others" in Kansas. Plaintiff's Opposition (Doc. #24-7) at 12, 14. As discussed, however, the claims of unnamed members of a proposed class which has not been certified are not relevant to the Court's inquiry. See, e.g., Chernus, 2018 WL 1981481, at *3; Tsan, 2015 WL 3826243, at *3. As noted, plaintiff asserts claims of Chequers Apartments which arise from a lease for laundry services provided at apartments in Missouri. That defendant sent communications regarding the administrative fee to a property manager in Kansas does not show that the brunt of the injury would be felt in Kansas, or that Hjelle knew as much. To the contrary, even accepting Orion's facts as true, the brunt of the injury was necessarily in Missouri, i.e. the place where the laundry services occurred, where the proceeds were collected and where the property owner was located. See, e.g., Grossman, 991 F.2d at 1387-88. On this record, Orion has not alleged facts which support its position that with respect to the assigned claims of Chequers Apartments, the brunt of the injury was felt in Kansas. See, e.g., Grynberg, 490 Fed. Appx. at 99.

Based on the foregoing analysis, the Court finds that plaintiff has not adequately alleged that defendant purposefully directed his activities to residents of the forum state, i.e. Kansas. Accordingly, plaintiff has not shown sufficient minimum contacts to confer personal jurisdiction over defendant.

## II. Jurisdictional Discovery And/Or Evidentiary Hearing

Plaintiff asserts that if the question of personal jurisdiction is "even a close call," it "respectfully requests either an evidentiary hearing or 60 days to serve written discovery requests

and to take Hjelle's jurisdictional deposition." Plaintiff's Opposition (Doc. #24-7) at 20.[11] Orion does not state what information it would seek to discover or present at a hearing. See id.

The Court exercises discretion in deciding whether to hold an evidentiary hearing to determine personal jurisdiction. See Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd., 703 F.3d 488, 494 (10th Cir. 2012). Where, as here, plaintiff has failed to make a prima facie showing and has not specified what additional information it would present (or seek to discover), the Court declines to hold an evidentiary hearing. See, e.g., id. at 494; Rodgers v. Fallin, No. CIV-12-171-D, 2013 WL 149723, at *2 (W.D. Okla. Jan. 14, 2013).

When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on factual issues raised by the motion. See Sizova v. Nat'l Inst. of Stds. & Tech., 282 F.3d 1320, 1326 (10th Cir. 2002). The Court, however, is vested with broad discretion in deciding whether to allow discovery. See TH Agric. & Nutrition, LLC v. Ace European Group Ltd., 416 F. Supp.2d 1054, 1073 (D. Kan. 2006). The Court abuses its discretion if the denial of discovery results in prejudice to plaintiff. See Sizova, 282 F.3d at 1326. Such prejudice exists where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." Id. (quotation and citation omitted). Here, the question of personal jurisdiction does not involve controverted facts. Moreover, plaintiff points to no specific evidence which it seeks to discover. On these facts, the Court declines to allow jurisdictional discovery. See, e.g., Schlumberger Tech. Corp. v. Greenwich Metals, Inc., No. 07-

---

[11] The Court notes that the proper format for such a request is through a motion under D. Kan. Rule 7.1. See World Wide Assoc. of Specialty Programs & Schs. v. Houlahan, 138 Fed. Appx. 50, 52 (10th Cir. 2005) (district court did not abuse its discretion by denying request for limited discovery when plaintiff made general request in response to motion to dismiss).

2252-KHV, 2008 WL 4758589, at *5 n.7 (D. Kan. Oct. 27, 2008) (denying leave to conduct jurisdictional discovery where no preliminary showing of jurisdiction made); Alphagen Biotech v. Langoost Enterprises, LLC, No. 2:13-CV-15 TS, 2013 WL 2389792, at *8 (D. Utah May 30, 2013) (court may deny jurisdictional discovery where plaintiff fails to make threshold prima facie case of personal jurisdiction).

### III. Transfer To Eastern District Of New York

Plaintiff asserts that under 28 U.S.C. § 1406(a),[12] if personal jurisdiction does not exist, the Court should transfer the case to the United States District Court for the Eastern District of New York. See Plaintiff's Opposition (Doc. #24-7) at 21. Plaintiff asserts that CSC's headquarters is located in the Eastern District of New York, which constitutes the "most logical venue." Id. Plaintiff asserts that it makes more sense to transfer the case "than to force the entire process to start over again with another filing, more delays on service, and additional delays that will prolong the ongoing fraud scheme." Id.

The Tenth Circuit has directed that where the Court determines that it lacks personal jurisdiction over defendant and the interests of justice require transfer rather than dismissal, the

---

[12] Section 1406(a) states as follows:

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

correct course is to transfer the case pursuant to 28 U.S.C. § 1631.[13]  See Trujillo v. Williams, 465 F.3d 1210, 1223 (10th Cir. 2006); Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1527 (10th Cir. 1987).  Before deciding to transfer a case, the Court must first satisfy itself that the proposed transferee court has personal jurisdiction over the parties.  See Grynberg, 490 Fed. Appx. at 105.  In addition, the Court must determine that transfer is in the interests of justice.  Factors warranting transfer rather than dismissal include whether (1) the new action would be time-barred; (2) the claims are likely to have merit; and (3) plaintiff filed the original action in good faith rather than after it either realized or should have realized that the forum in which it filed was improper. Id.; Trujillo, 465 F.3d at 1223.

Here, neither party has addressed whether the proposed transferee court has personal jurisdiction over the parties or whether transfer is in the interests of justice under Section 1631.  See Plaintiff's Opposition (Doc. #24-7) at 21; Defendant Mark Hjelle's Corrected Reply In Further Support Of His Motion To Dismiss Plaintiff's First Amended Class Action Complaint (Doc. #30) at 14.  Accordingly, the Court will allow limited briefing on this issue.  On or before **December 28, 2018**, each party shall file a brief addressing whether transfer is in the interests of justice under

---

[13]  Section 1631 states as follows:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

Section 1631 and if so, whether the proposed transferee court would have personal jurisdiction over the parties. On or before **January 5, 2019**, each party may file a response brief. The parties' briefs shall not exceed five pages in length and shall not incorporate by reference arguments, facts or authority that are asserted in other documents.

**IT IS THEREFORE ORDERED** that the Court **SUSTAINS in part** <u>Defendant Mark Hjelle's Motion To Dismiss  Plaintiff's First Amended Class Action Complaint</u> (Doc. #18) filed May 15, 2018 and finds that it lacks personal jurisdiction over Mark Hjelle.

**IT IS FURTHER ORDERED** that on or before **December 28, 2018**, each party shall file a brief addressing whether transfer is in the interests of justice under Section 1631 and if so, whether the proposed transferee court would have personal jurisdiction over the parties.  On or before **January 5, 2019**, each party may file a response brief.  The parties' briefs shall not exceed five pages in length and shall not incorporate by reference arguments, facts or authority that are asserted in other documents.

Dated this 13th day of December, 2018 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge